UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TENISHA J. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01716-TWP-MJD |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner | ) | |
| for Operations, Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Tenisha J. Williams ("Williams") requests judicial review of the final decision of the

Social Security Administration denying her application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the

"Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the

Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the decision

for further proceedings consistent with this decision.

### I.    Background

Williams filed an application for DIB and SSI on October 22, 2013, alleging a disability

onset date of September 3, 2013. [Dkt. 13-7 at 3, 7.] Williams alleges disability due to lupus,

stroke, diabetes, and depression.[1] [Dkt. 13-8 at 6.] Williams' application was initially denied on

January 9, 2014, and denied again on May 8, 2014, upon reconsideration. Williams timely filed a

---

[1] The parties recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 16; Dkt. 20.] Because these facts involve Williams' confidential medical information, the Court will incorporate by reference that factual background and will articulate specific facts as needed below.

written request for a hearing, which was held on July 30, 2015, before Administrative Law Judge Jody Hilger Odell (the "ALJ"). [Dkt. 13-4 at 16-59.] The ALJ issued a decision on April 6, 2016, denying Williams' applications for DBI and SSI. [Dkt. 13-2 at 16–32.] On March 30, 2017, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. [Dkt. 13-2 at 2.] Williams timely filed this action on May 24, 2017, seeking judicial review of the decision denying her benefits. [Dkt. 1.]

**II.    Legal Standard**

To be eligible for DIB or SSI, a claimant must have a disability within the meaning of 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ applies a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. But separate, parallel statutes and regulations exist for DIB and SSI claims. Citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing her remaining capacity for work-related activities. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).

The ALJ's findings of fact are conclusive and must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ; rather, it may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must articulate her analysis of the evidence in her decision; she must "provide some glimpse into her reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III.    The ALJ's Decision

The ALJ first determined that Williams has not engaged in substantial gainful activity since the September 3, 2013 alleged onset date. [Dkt. 13-2 at 21.] At step two, the ALJ determined that Williams has severe impairments of cerebrovascular accident/cerebrovascular disease, Bell's palsy, lupus, and reconstructive surgery of a weight bearing joint. [*Id.*] However at step three, the ALJ found that Williams does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairments. [Dkt. 13-2 at

23.] In making this determination, the ALJ considered Listings 1.02 (Major dysfunction of a joint(s)), 11.04 (Vascular insult to the brain), and 14.02 (Systemic lupus erythematosus). [Dkt. 13-2 at 23.]

The ALJ next analyzed Williams' RFC, concluding that she has the RFC to perform a range of light work with these restrictions:

> [L]ift, carry, push, and pull 20 pounds and up to 10 pounds frequently; sit for six hours per eight-hour workday; stand for six hours per eight-hour workday; walk for six hours per eight-hour workday; frequently reach overhead with the left upper extremity; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl.

[*Id.*] In finding these limitations, the ALJ considered Williams' "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [*Id.*] At step four, the ALJ concluded that Williams is unable to perform any past relevant work. [Dkt. 13-2 at 29.] The ALJ proceeded to step five, using testimony from the vocational expert that someone with Williams' age, education, work experience, and RFC would be able to perform unskilled light occupations such as mail clerk (non-postal), office machine operator, and office helper. [Dkt. 13-2 at 31.] Because the ALJ found these jobs existed in significant numbers in the national economy, she concluded that Williams was not disabled. [*Id.*]

## IV.    <u>Discussion</u>

Williams asserts that the ALJ committed several errors requiring remand. Specifically, she argues that the ALJ failed to properly consider two medical opinions in the record. [Dkt. 16 at 22-25.] Williams also argues that the ALJ erred in failing to follow SSR 96-6p in seeking additional expert input regarding the status of Williams' left shoulder and ignored evidence that her shoulder had not improved. [Dkt. 16 at 26-28.] She also seems to challenge the ALJ's

analysis of the evidence under Listing 1.02 for Major dysfunction of a joint(s). Finally, Williams maintains that the ALJ failed to reasonably evaluate Williams' subjective statements about the intensity, persistence, and limiting effects of her symptoms. [Dkt. 16 at 29-34.]

### A.  Consideration of Medical Opinions

Williams first challenges the weight given to the opinion of her treating physician, Dr. Steven H. Neucks, M.D. She contends the ALJ failed to recognize the special deference given to treating source opinions and omitted consideration of the applicable regulatory factors used to determine the appropriate weight to be given such an opinion. Williams also contests the ALJ's consideration of the opinion of the consultative examiner, Carol Hulett, M.D.

Typically, a treating source's opinion on "'the nature and severity of a medical condition is entitled to controlling weight if supported by medical findings and consistent with substantial evidence in the record.'"[3] *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(c)(2). However, the "weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006). The ALJ may discount a treating source's opinion if it is unsupported by or inconsistent with the record. *Vanprooyen v. Berryhill,* 864 F.3d 567, 572 (7th Cir. 2017). Further, when a treating source's opinion is not given controlling weight, the ALJ "must offer 'good reasons' for declining to do so." *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010). In deciding what weight to give a treating source's opinion, the ALJ must consider "the length, nature and extent of the treatment relationship; frequency of examination, the [source's] specialty; the types of tests

---

[3] The treating physician rule continues to apply to claims, like Williams', filed before March 27, 2017. 20 C.F.R. §404.1520c.

performed; and the consistency and support for the [source's] opinion." *Larson*, 615 F.3d at 751; *see also* 20 C.F.R. § 404.1527(c)(2)-(5).

In August 2015, Dr. Neucks completed a Physical Residual Functional Capacity Questionnaire for Williams in which he opined that she had extremely limited physical capacities. [Dkt. 14-10 at 51–55, R. 1618–22.] For example, he opined she could sit for 30 minutes continuously, stand for 15 minutes continuously, and walk for 15 minutes continuously. [Dkt. 14-10 at 51, R. 1618.] He also limited her to sitting no more than 3 hours in an 8-hour workday, and standing and walking for a total of 1 hour each in an 8-hour workday. [*Id.*] Dr. Neucks stated that his opinion was based on his attending relationship with Williams, clinical observation, objective testing, Williams' subjective complaints, and her diagnoses of lupus and fibromyalgia. [Dkt. 14-10 at 55, R. 1622.]

Finding Dr. Neucks' opinion "not supported by or consistent with [his] treatment notes" and "other medical providers in the record," the ALJ gave his opinion "little weight." [Dkt. 13-2 at 29, R. 28.] However, the ALJ's decision fails to reflect consideration of the factors used in determining how much weight to give a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(5). For example, the ALJ did not acknowledge that Dr. Neucks is a rheumatologist, the relevant specialty for lupus, or that he had been treating Williams regularly, every 2 to 3 months, since at least March 2012.[4] [Dkt. 13-11 at 38, R. 559; Dkt. 13-4 at 40, R. 174; Dkt. 13-11 at 3, R. 524.] Yet, Dr. Neucks' opinion is supported by his treatment notes and findings on physical exams, including findings of pain, fatigue, joint pain, swollen joints, tenderness, and migraines. In another social security case in which the claimant also had lupus,

---

[4] The Commissioner argues the ALJ acknowledged that Dr. Neucks had been treating Williams for lupus since 2013. [Dkt. 20 at 15 (citing Tr. 28; Dkt. 13-2 at 26).] The cited pages do not support this argument, and the Court's review of the ALJ's decision reflects no consideration of the length of Dr. Neucks' treatment relationship with Williams.

an ALJ (not the same ALJ who decided Williams' case) had determined that Dr. Neucks'

opinion was inconsistent with his treatment records, and Magistrate Judge Tim A. Baker

concluded this determination was erroneous, explaining:

> First, it is difficult to review what the ALJ found inconsistent because the ALJ
> broadly cites to all of Dr. Neucks' treatment notes as support for his conclusion.
> Second, the inconsistencies alleged by the ALJ are to be expected with [the
> claimant's] impairments. For example, the ALJ criticized Dr. Neucks for opining
> [the claimant] has severe impairments, while reporting unremarkable physical
> exams. Such inconsistencies are actually consistent with [the claimant's] lupus and
> fibromyalgia.

*Jenkins v. Colvin*, No. 1:16-cv-00482-TAB-LJM, 2016 WL 6889167, at *2 (S.D. Ind. Nov. 23,

2016). Similarly, here too, it is hard to determine what the ALJ thought was inconsistent between

Dr. Neucks' opinion of Williams' physical abilities and his treatment notes because the ALJ cites

only broadly to all of Dr. Neucks' treatment notes. Nor does the ALJ identify what specific findings

of other medical providers are inconsistent with Dr. Neucks' opinion. Also, as noted in *Jenkins*,

unremarkable physical exams are actually consistent with a diagnosis of lupus.

Curiously, in defending the ALJ's weighing of medical opinions, the Commissioner

asserts that the state agency reviewing physicians Drs. Corcoran and Brill gave opinions that

were consistent with the opinions of the consultative examiner Dr. Hulett.  [Dkt. 20 at 16.] This

is incorrect. Although the ALJ discussed the state agency physicians' opinions and that of the

consultative examiner in the same paragraph, and accorded all those opinions "strong weight,"

the ALJ's decision did not find that the opinions were consistent. Had she done so, she would

have erred because the opinions are actually inconsistent. As one example, the state agency

physicians assessed Williams with the ability to stand and/or walk for about 6 hours in an 8-hour

workday [Dkt. 13-5 at 10, R. 202; Dkt. 13-5 at 22, R. 214], whereas Dr. Hulett opined that

Williams had a limited ability to stand and walk, and she rated Williams' ability to stand and walk as "never to very limited." [Dkt. 13-17 at 17, R. 925].

Moreover, an ALJ must build an accurate and logical bridge from the evidence to her conclusion, and the ALJ's decision must be internally consistent. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). While the ALJ states that she gave "strong weight" to the consultative examiner Dr. Hulett's opinions, the ALJ nonetheless found Williams capable of performing a range of light work; lifting, carrying, pushing, and pulling 20 pounds and up to 10 pounds frequently; standing and walking for 6 hours in an 8-hour workday; and frequently reaching overhead with her left upper extremity. [Dkt. 13-2 at 23.] Dr. Hulett assessed Williams with much greater restrictions: she noted Williams was "fairly limited in her ability to walk and get around on a normal basis" [Dkt. 13-17 at 17, R. 925]; she determined that Williams was only able to lift 10 pounds using her right hand occasionally and unable to carry 10 pounds; she found Williams to have a limited ability to stand, assessing her abilities to stand and walk as "never to very limited" [*id.*]; and Dr. Hulett determined that Williams would be unable to do any strength or other meaningful activities with her left arm. [*Id.*] Giving Dr. Hulett's opinions strong weight would have resulted in greater physical restrictions than the ALJ found Williams to have.

The Commissioner argues that Williams ignores the fact that the consultative exam took place just five weeks after Williams' shoulder surgery. While the agency attempts to explain all of Dr. Hulett's opinions as reflecting the recent surgery and the fact that Williams was still recovering from that surgery, the Court does not read Dr. Hulett's report in this way. Though Dr. Hulett notes Williams' limitations with her left arm and then writes that "she is still recovering from the surgery," [Dkt. 13-17 at 17, R. 925], Dr. Hulett did not link Williams' limitations in standing and walking to her recent shoulder surgery. [Dkt. 13-17 at 17, R. 925.] Furthermore, the

limitations in standing and walking were supported by Dr. Hulett's observation of "generalized weakness" in Williams' lower extremities. [*Id.*]

The Court is unable to square the ALJ's RFC finding with her decision to give Dr. Hulett's opinions "strong weight." The ALJ should have explained this inconsistency and without a sufficient explanation, the ALJ failed to build and accurate and logical bridge from the evidence to her conclusions. *See, e.g.*, *Parker v. Astrue*, 597 F.3d 920, 924–25 (7th Cir. 2010) (concluding inconsistent findings required remand). In addition, the ALJ's decision to give little weight to Dr. Neucks' opinions is not supported by substantial evidence in the record. And the ALJ failed to acknowledge that Dr. Neucks' opinions appear consistent with Dr. Hulett's opinions. These errors in weighing the medical opinions require a remand.

### B. Additional Expert Evidence on Williams' Left Shoulder Impairment

Williams next argues that the ALJ erred in failing to follow SSR 96-6p in seeking additional expert evidence on the status of Williams' left shoulder and also erred in ignoring evidence that she had not improved. She also seems to be challenging the ALJ's analysis under Listing 1.02 for Major dysfunction of a joint(s), namely her left shoulder joint.

Taking the last challenge first, the ALJ did identify the appropriate Listing and discuss the evidence. Listing 1.02 requires a major dysfunction of a joint(s):

> [c]haracterized by gross anatomical deformity … and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint. With: … **[i]nvolvement of one major peripheral joint in each upper extremity** …, resulting in the inability to perform fine and gross movements effectively….

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02(B) (emphasis added); *see also Bumgardner v. Berryhill*, No. 3:17-cv-00081-RLY-MPB, 2018 WL 797394, at *4 (S.D. Ind., Feb. 9, 2018). Williams has not identified any evidence that would show she satisfies each of the medical

criteria of the Listing, specifically including that she has involvement of one major peripheral joint in each upper extremity, which she must do to satisfy the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). She does not even allege involvement of her right upper extremity.

Social Security Ruling 96-6p, cited by Williams in support of her argument, requires an ALJ to obtain an updated medical opinion on the issue of medical equivalence "[w]hen additional medical evidence is received that in the opinion of the administrative law judge … may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *4. Given that Williams has not even alleged involvement of a right upper extremity, she cannot show the ALJ erred in not obtaining an additional medical opinion. Williams argues that the state agency physicians last reviewed the record in May 2014 and additional evidence was entered into the record after their review. But she has not identified what evidence might make a difference in their determination that she did not meet or equal Listing 1.02.

Finally, Williams argues the ALJ impermissibly cherry picked from the evidence to support the conclusion that her shoulder has improved while ignoring evidence supporting her disability claim. But the ALJ adequately considered the evidence and concluded that Williams' left shoulder had significantly improved by May 2014. Where, as here, there is conflicting evidence, the ALJ may permissibly resolve the conflict. *See Herr v. Sullivan*, 912 F.3d 176, 181 (7th Cir. 1990) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ." (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The mere existence of conflicting evidence regarding Williams' shoulder improvement did not require the

ALJ to call an additional expert to present evidence; "[w]eighing conflicting evidence from medical experts … is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

### C.  Evaluation of Williams' Subjective Statements

Lastly, Williams contests the ALJ's evaluation under Social Security Ruling 16-3p of her statements about the intensity, persistence, and limiting effects of her subjective symptoms. The ALJ "must adequately explain her credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Because remand is necessary on other grounds, the ALJ should reassess Williams' credibility in light of her reconsideration of the medical opinion evidence. Further consideration and weighing of the medical opinions may affect the ALJ's consideration of Williams' subjective statements.

In addition, the Court points out that specific reasons given by the ALJ for finding Williams' statements about her symptoms "not entirely consistent with the record" [Dkt. 13-2 at 24, R. 23] are erroneous. First, the ALJ found that Williams' testimony about receiving home healthcare services and the medical necessity for such services was inconsistent with the medical evidence. [Dkt. 13-2 at 27, R. 26.] The ALJ wrote that "[a]mong the additional records that were received after the hearing, there was no reference to in-home healthcare services being ordered or any reports from such a provider." [*Id.*] However, records, albeit limited ones, of in-home healthcare services were included in the records received after the July 2015 hearing. Exhibits 25F and 26F represent a home health certification and plan of care for the period of March to July 2016. [Dkt. 14-15 at 12–15, R. 1883-86.] These records show that Williams was ordered to have home healthcare services a few hours each day, 4 to 5 days per week, for assistance with her activities of daily living and instrumental activities of daily living. And her primary care

physician, Dr. Sridevi Damera, M.D., certified that Williams needed the home healthcare. [Dkt. 14-15 at 13, 15, R. 1884, 1886.] And, as Williams notes, her home healthcare attendant was present at the hearing before the ALJ [Dkt. 13-4 at 20, R. 154], and the attendant's presence provides evidence that Williams was, in fact, receiving home healthcare at the time of the hearing, which corroborates Williams' testimony that she received such services at that time. [Dkt. 13-4 at 29, 35–36, R. 163, 169–70.]

The ALJ also discredited Williams' subjective statements in part because Williams had claimed she used a cane and a walker, and the ALJ found no mention of a cane or other assistive device in the record for the latter part of 2014 or in 2015. [Dkt. 13-2 at 29, R. 28.] However, the home health certification and plan of care records reflect Williams' use of a wheelchair, walker, and cane. [Dkt. 14-15 at 12–15, R. 1883-86.] Accordingly, on remand the ALJ should reevaluate Williams' subjective statements about the intensity, persistence, and limiting effects of her symptoms.

## V.    Conclusion

For the foregoing reasons, the undersigned recommends that the District Judge **REVERSE** and **REMAND** the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of the weight given to the opinions of Williams' treating physician Dr. Neucks and the consultative examiner Dr. Hulett and for further consideration of Williams' subjective statements about the intensity, persistence, and limiting effects of her symptoms.

### Notice Regarding Objections

Within fourteen days of being served with a copy of this report and recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the

report and recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the report and recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

Dated:  7 JUN 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All counsel registered through the Court's ECF system